UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Charles P. Hynes,
    Claimant

    v.                                          Civil No. 04-cv-490-SM
                                                    Opinion No. 2005 DNH 094
Jo Anne B. Barnhart,
Commissioner of Social Security,
    Respondent

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), claimant, Charles Hynes, moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the Act). Respondent objects and moves for an order affirming her decision. For the reasons set forth below, the Commissioner's motion for an order affirming her decision is granted.

**Factual Background**

I. Procedural History.

In November of 2001, claimant filed an application for disability insurance benefits under Title II of the Act, alleging that he had been disabled since August, 1993, due to bad knees,

back pain, and emphysema. The Social Security Administration denied his application and claimant requested a hearing before an Administrative Law Judge ("ALJ"). Following the requested hearing, the ALJ denied claimant's application, concluding that he remained able to perform a significant number of light jobs in the national economy through March 31, 1996 (the date on which claimant's insured status expired). Claimant appealed that adverse finding to this court (DiClerico, J.), which remanded the case, concluding that the ALJ failed to clearly explain the evidentiary basis for her residual functional capacity ("RFC") assessment and neglected to adequately discuss her reasons for rejecting the opinions of claimant's treating physicians. Hynes v. Barnhart, No. 03-62-JD (D.N.H. Jan. 22, 2004).

In July, 2004, the ALJ conducted a second hearing, at which claimant, who was represented by counsel, appeared and testified. In September, 2004, the ALJ issued a new decision, in which she again concluded that claimant was not disabled at any time prior to the date on which his insured status expired. The Appeals Council denied claimant's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.

In response, claimant filed this timely action, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act. Claimant then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 7). The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 9). Those motions are pending.

II. Stipulated Facts.

Pursuant to Local Rule 9.1(d), the parties have submitted a comprehensive statement of stipulated facts which, because it is part of the court's record (document no. 10), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. Properly Supported Factual Findings by the ALJ are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[1] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the adverse position. See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). See also Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222-23 (1st Cir. 1981).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary

---

[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)).  It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts."  Irlanda Ortiz, 955 F.2d at 769 (citation omitted).  Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings.  See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.   The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places a heavy initial burden on the

claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, the claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective assertions of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform his previous work, the burden shifts to the

Commissioner to show that there are other jobs in the national economy that he can perform.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

    (1)  whether the claimant is engaged in substantial
         gainful activity;

    (2)  whether the claimant has a severe impairment;

    (3)  whether the impairment meets or equals a listed
         impairment;

    (4)  whether the impairment prevents the claimant from
         performing past relevant work; and

    (5)  whether the impairment prevents the claimant from
         doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm the determination that claimant is not disabled.

**Discussion**

I.  Background - The ALJ's Findings.

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520.  Accordingly, she first determined that claimant had not been engaged in substantial gainful employment since August of 1993 (his alleged onset of disability).  Next, the ALJ concluded that the medical evidence of record indicates that, prior to the expiration of his insured status, the claimant had

back pain, knee pain, and emphysema, impairments that are "severe" within the meaning of the regulations. But, the ALJ determined that those impairments did not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation 4.

Next, the ALJ assessed claimant's residual functional capacity ("RFC") and concluded that he retained the ability to lift and carry no more than 20 pounds occasionally and 10 pounds frequently, but could not climb. Given those restrictions, the ALJ concluded that, prior to the expiration of his insured status, claimant could not perform his past relevant work. At the final stage of the analysis, however, the ALJ concluded that claimant was capable of performing jobs available in the national economy and, therefore, was not disabled within the meaning of the Act prior to the expiration of his insured status, on March 31, 1996.

II. Claimant's Assertions of Error.

In support of his motion to reverse or remand the ALJ's disability determination, claimant challenges three aspects of

the ALJ's decision.  First, he says the ALJ failed to take into consideration the full extent of his need to change positions during the course of a work day.  Next, he says the ALJ neglected to address what claimant says was a conflict between the testimony of the vocational expert and the Dictionary of Occupational Titles.  And, finally, he claims the ALJ failed to adequately account for his limited (i.e., eighth grade) education.

   A.   Claimant's Need to Alternate Positions.

   Claimant asserts that the ALJ erred by failing to properly account for his need to frequently change positions. Specifically, he says:

> In her most recent decision, the ALJ again failed to address the treating source opinions regarding the plaintiff's need to frequently change positions or change positions at will. . . . The ALJ found the plaintiff had an RFC that required the opportunity to "change positions."  Plaintiff asserts this restriction is not consistent with the treating sources' restrictions which indicate the need to "frequently" change positions (sitting, standing, and walking) [or] change positions "at will."  The Commissioner defines "frequent" to mean up to two thirds of an eight hour work day. . . . The "opportunity to change positions" [i.e., the language employed by the ALJ] cannot be read to mean up to two-thirds of the work day.

Claimant's memorandum at 5-6 (citations omitted).  This argument lacks merit.

The transcript of the hearing plainly reveals that, despite the ALJ's failure to use the word "frequently" in her written decision, both she and the vocational expert recognized that claimant's need to change positions meant that he might need to frequently alternate between sitting, standing, and walking.  The record also clearly reveals that the ALJ understood that the word "frequently," as used in the pertinent regulations, means as much as two-thirds of a work day.  In fact, when claimant's attorney posed a hypothetical question to the vocational expert and suggested that the word "frequently" meant "up to three-quarters of a day," the ALJ immediately corrected him.  Transcript at 267-68.

Thus, claimant's assertion that "the hypotheticals were incomplete and the ALJ could not rely upon the VE's responses" is unsupported by the record.  The ALJ's RFC determination and the hypothetical questions she posed to the vocational expert properly account for claimant's treating source opinions, which

suggest that he must be able to alternate between sitting, standing, and walking "frequently" during the work day.

      B.    <u>The Alleged Conflict between the DOT and VE</u>.

Next, claimant asserts that there was a conflict between the information provided by the Dictionary of Occupational Titles ("DOT") and the vocational expert's testimony. And, says claimant, the ALJ never sought to resolve that conflict. Claimant sees such a conflict insofar as the DOT does not specifically describe the jobs referenced by the vocational expert as ones in which the worker may frequently change his or her position. Importantly, however, claimant does not suggest that the DOT describes <u>any</u> light jobs meeting that requirement. In other words, based upon the record presented by claimant, it would appear that the DOT simply does not mention whether a job lends itself to frequent positional changes. That, it would seem, is one of the areas in which the testimony of a vocational expert can supplement the DOT.

Even if there were a "conflict" between the DOT (which is silent on the issue of positional changes) and the vocational

expert's testimony, the vocational expert ultimately resolved that issue. In response to a hypothetical posed by the ALJ, the vocational expert opined that a worker with claimant's limitations could perform the following jobs: toll collector, office helper, mail clerk, and storage facility rental clerk. When claimant's counsel added the requirement that the individual be able to alternate positions frequently (i.e., up to two-thirds of the work day), the vocational expert testified that he believed:

> [T]he job of a toll collector and the job of storage facility rental clerk could be performed. The job of an office helper and the mail clerk would be compromised. I would say there would be jobs that would remain. There would also be jobs that would be eliminated. I think it's reasonable and conservative to eliminate 50 percent of the job base [relating to office helper and mail clerk].

Transcript at 267-68. In other words, the need to change positions "frequently" would not interfere with an individual's ability to perform the job requirements of a toll collector or storage facility rental clerk. And, as to the office helper and mail clerk positions, approximately one-half of all such jobs in the national economy could be performed by a person who needed to change his or her position frequently.

As the Commissioner correctly points out, "since the DOT does not address the factor of changing position in these or any other jobs, there is no conflict" between the DOT and the vocational expert's testimony.  Commissioner's memorandum at 12.  Here, the vocational expert simply applied his expertise and provided the ALJ with information that was not provided in the DOT.  Contrary to claimant's assertion, there was no "conflict" between the vocational expert's testimony and the data provided by the DOT.  And, perhaps more importantly, the vocational expert unambiguously testified that there was a substantial number of jobs in the national economy that a person with claimant's limitations - including the need to change positions frequently - could perform.

C.   Claimant's Educational Background.

Finally, claimant asserts that the ALJ failed to properly account for his limited education in determining whether there were jobs in the national economy which he could perform.  Again, however, the court disagrees.

Although the record is not entirely clear, claimant has, at the very least, an eighth grade education.[2]  He points out that each of the jobs identified by the vocational expert, with the exception of office helper, requires an "R3" reasoning development level, which he says is beyond his abilities.  But, the vocational expert testified that a level "3" required the abilities typically possessed by a person who completed the seventh or eighth grade.  Transcript at 271.  That testimony is consistent with the DOT, which states that an R3 reasoning level requires the individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations."  Dictionary of Occupational Titles, Appendix C at 1011 (4th ed. 1991).  Nothing in the record suggests that claimant lacks the intellectual ability to perform a job at that level.

---

[2]  In his Disability Report, claimant reported that, in 1958, he completed the ninth grade.  Transcript at 81.  At his original hearing before the ALJ, however, he testified that he graduated from the eighth grade, and completed only about two months of ninth grade before leaving school.  Transcript at 33.

## Conclusion

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that the there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled prior to the date on which his insured status expired.

For the foregoing reasons, as well as those set forth in the Commissioner's memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 7) is denied, and the Commissioner's motion to affirm her decision (document no. 9) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

   **SO ORDERED.**

                                   _____
                                   Steven J. McAuliffe
                                   Chief Judge

June 15, 2005

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.